UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHANE RAMSUNDAR, et al.,

    Petitioners,

v.

CHAD WOLF, Acting Secretary, U.S.
Department of Homeland Security, et al.,

    Respondents.

20-CV-402
ORDER

---

VERNON JONES, et al.,

    Petitioners,

v.

CHAD WOLF, Acting Secretary, U.S.
Department of Homeland Security, et al.,

    Respondents.

20-CV-361
ORDER

---

The petitioners in these two actions are 27 civil immigration detainees held in the custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") at the Buffalo Federal Detention Facility in Batavia, New York ("BFDF"). They have filed "Emergency Petition[s] for Writ[s] of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint[s] for Injunctive Relief." *Jones v. Wolf*, No. 20-CV-361 Docket Item 1; *Ramsundar v. Wolf*, No. 20-CV-402 Docket Item 1. They also have filed motions for temporary restraining orders ("TRO"). *See Jones*, Docket Item 8; *Ramsundar*, Docket Item 2. In both cases, the petitioners allege that their continued civil detention in the wake of the COVID-19 pandemic violates their

substantive rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, and they seek their immediate release from ICE custody. *Jones*, Docket Item 1 at 23-24; *Ramsundar*, Docket Item 1 at 20. Each petitioner is "either over the age of fifty and/or [has] a serious underlying medical condition, making [him or her] more vulnerable to complications arising from COVID-19." *Jones*, Docket Item 1 at 43; *Ramsundar*, Docket Item 1 at 4.

## **BACKGROUND**

On April 2, 2020, this Court found that holding certain of the *Jones* petitioners in the then-current conditions at BFDF during the COVID-19 epidemic violated their substantive Due Process rights to reasonably safe conditions of confinement. *Jones v. Wolf*, No. 20-CV-361, 20 WL 1643857 (W.D.N.Y. Apr. 2, 2020) at *14-27. But it was "not convinced" that release was the appropriate remedy—at least at that juncture. *Id.* at *30-31. Instead, the Court ordered the respondents to provide those petitioners who are vulnerable individuals, as defined by the Centers for Disease Control and Prevention ("CDC"), with a living situation that facilitates "social distancing." *Id.* at *31-32.

On April 6, 2020, this Court ordered the respondents in the *Ramsundar* matter to "show cause . . . why the Due Process violations identified this Court's prior decision and order in *Jones v. Wolf*, No. 20-CV-361, 20 WL 1643857 (W.D.N.Y. Apr. 2, 2020), do not extend to the petitioners in this action." *See Ramsundar*, Docket Item 4 at 2.

In response to these orders, the respondents' medical expert, Captain Abelardo Montalvo, M.D., has determined that petitioners who fall into one or more of the following categories meet the CDC's definition of vulnerable individuals:

> a. People 65 years and older
>
> b. People who live in a nursing home or long-term care facility
>
> c. People of all ages with underlying medical conditions, particularly if not well controlled, including
>     i. People with chronic lung disease or moderate to severe asthma
>     ii. People who have serious heart conditions
>     iii. People who are immunocompromised . . . [including those with the following conditions]:
>         1. Cancer treatment
>         2. Smoking
>         3. bone marrow or organ transplant
>         4. immune deficiencies
>         5. poorly controlled HIV or AIDs, and
>         6. prolonged use of corticosteroids and other immune weakening medications
>     v. People with severe obesity (body mass index [BMI] of 40 or higher)
>     vi. People with diabetes
>     vii. People with chronic kidney disease undergoing dialysis
>     viii. People with liver disease.

*Jones*, Docket Item 57 at 2-3.

As of today, Captain Montalvo has identified 13 of the 22 remaining *Jones* petitioners[1] and 3 of the 4 *Ramsundar* petitioners as meeting these criteria. *Jones*, Docket Item 45 at 4-5; *Ramsundar*, Docket Item 6-2 at 8. But *Jones* petitioners Donga, Jules, Bhuyan, Cherry, Narain, Salcedo, Thomas, and Wilson, and *Ramsundar* petitioner Antonio Espinoza do not meet these criteria. *Jones*, Docket Item 45 at 5-6; *Ramsundar*, Docket Item 6-2 at 8.

---

[1] *Jones* petitioner Shantadewie Rahmee was released on March 30, 2020. *See Jones*, Docket Item 42-5 at 1 n.1.

3

Respondent Jeffrey Searls, Officer in Charge of BFDF, has attested that of the 13 vulnerable *Jones* petitioners, 9 individuals—Blackman, Commissiong, Harsit, Lainez Mejia, Brathwaite, Espinal-Polanco, Forbes, Quintanilla-Mejia, and Sow—have been provided with their own cells; 2 individuals—Adelakun and Nwanwko—have been released; and 2 individuals—Concepcion and Falodun—remain in a communal-living situation under quarantine. *Jones*, Docket Item 47 at 2-3, Docket Item 59 at 3. He also has attested that of the 3 vulnerable *Ramsundar* petitioners, 1 individual—Shane Ramsundar—has been provided his own cell; 1 individual—Cedeno-Larios—has been released; and 1 individual—Gomatee Ramsundar—remains in a communal-living situation because BFDF does not have any individual cells for female detainees. *Ramsundar*, Docket Item 6-3 at 23-4, Docket Item 10 at 5-7.

Captain Montalvo also has represented that all vulnerable petitioners are afforded the following "social distancing" measures:

    a. Maintaining a distance of 6 feet between individuals;

    b. Providing space at meal time so that each detainee can remain 6 feet away from any other detainee, and allowing detainees to eat at their beds for maximum distancing;

    c. Pre-screening all visitors to the housing units (which will consist solely of BFDF staff) by taking temperatures and seeing if the person is exhibiting flulike symptoms;

    d. Providing for individual cells and/or beds with 6 feet of separation between each bed;

    e. Providing outdoor recreation in areas allowing for detainees to maintain 6 feet of separation from any other detainee.

*Jones*, Docket Item 45 at 2.  Captain Montalvo further represents that the following additional steps related to personal protective equipment ("PPE") are being taken at BFDF "to help combat the introduction, and limit the spread, of COVID-19":

> . . . [c]arrying of masks for detainee use and staff use during transports or pick-ups; . . . [d]etainees who are moved out of the . . . quarantine unit[s] for any type emergency will be required to wear N-95 mask and gloves; . . . [i]ncreased stock of PPE and cleaning supplies; . . . [f]it testing of PPE masks for custody staff and removal of facial hair that may interfere with tight seal of mask to face; . . . [u]se of surgical masks for detainee use to reduce exposure; . . . [and w]eekly counting of PPE to monitor supplies.

*Ramsundar*, Docket Item 6-2 at 6-7.

## DISCUSSION

In *Jones*, this Court explained that the Due Process violation in these matters "stems from [the respondents'] failing to take the steps recommended by public health officials to protect high-risk individuals from contracting COVID-19."  20 WL 1643857 at *1.  But if the respondents could provide petitioners identified as vulnerable by the CDC with a living situation that facilitates "social distancing," the violation would be rectified and judicially-ordered release would not be necessary.  *Id.* at *14-15.  It now considers whether the respondents' measures suffice.

### A. Released Individuals

The respondents have released four of the original petitioners to these actions— *Jones* petitioners Rahmee, Adelakun, and Nwankwo, and *Ramsundar* petitioner Cedeno-Larios.  "Under Article III of the Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action."  *Leybinsky v. U.S. Immigration and Customs Enforcement*, 553 F. App'x 108, 109 (2d Cir. 2014) (summary

order) (quoting *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013)).

"Under 28 U.S.C. § 2241, the habeas statute under which [the] petitioner[s] challenged [their] detention, [courts] retain jurisdiction so long as the petitioner[s are] 'in custody.'" *Pierrilus v. U.S. Immigration & Customs Enforcement*, 293 F. App'x 78, 79 (2d Cir. 2008). Because Rahmee, Adelakun, Nwankwo, and Cedeno-Larios have been released from "ICE custody, the[ir] petition[s] ha[ve] been rendered moot divesting the Court of subject matter jurisdiction." *Diop v. Sessions*, 2019 WL 1894387, at *2 (S.D.N.Y. Mar. 20, 2019). Accordingly, their motions for TROs are denied and their petitions are dismissed.

### B.     Petitioners Who Do Not Meet the CDC's Criteria for "Vulnerable Individuals"

The Court is satisfied that there is no ongoing Due Process violation with respect to *Jones* petitioners Donga, Jules, Bhuyan, Narain, Salcedo, Thomas, and Wilson. Although these individuals may be at heightened risk of developing complications from COVID-19, they do not meet the CDC's current criteria for vulnerable individuals. Because the violation at issue arises from the respondents' failure to act on their "actual knowledge of serious risks to the health and well-being of individuals with the vulnerabilities identified by the CDC," *Jones*, 20 WL 1643857 at *12, the respondents are not acting with deliberate indifference to the needs of Donga, Jules, Bhuyan, Narain, Salcedo, Thomas, and Wilson, none of whom meets these criteria. Accordingly, their motions for TROs are denied.

Additionally, *Jones* petitioner Cherry and *Ramsundar* petitioner Antonio Espinoza were found not to meet the CDC's criteria for vulnerable individuals but nevertheless were placed in single-occupancy cells. *Jones*, Docket Item 48; *Ramsundar*, Docket

Item 6-2 at 8. The Court therefore need not decide whether Cherry and Antonio Espinoza in fact meet the CDC's criteria. As discussed below, they have been provided all the relief the Court otherwise would order. Accordingly, their motions for TROs are denied to the extent they seek immediate release and denied as moot to the extent they seek an order requiring the petitioners to facilitate their taking alternative "social distancing" measures.

Donga, Jules, Bhuyan, Narain, Salcedo, Thomas, Wilson, Cherry, and Antonio Espinoza may move to re-open their petitioners if the CDC amends its guidance.

### C. Petitioners Who Meet the CDC's Criteria for "Vulnerable Individuals"

#### 1. Vulnerable Petitioners Placed in Single-Occupancy Cells

The Court also is satisfied that the respondents' actions with respect to *Jones* petitioners Blackman, Commissiong, Harsit, Lainez Mejia, Brathwaite, Espinal-Polanco, Forbes, Quintanilla-Mejia, and Sow, and *Ramsundar* petitioner Shane Samsundar, have remedied the previously-identified Due Process violation. More specifically, the following measures have adequately facilitated these petitioners' taking the "social distancing" measures promulgated by the CDC and the New York State Department of Health: placement in single-occupancy cells;[2] accommodation to eat meals in those

---

[2] This Court previously recognized that "hous[ing] [vulnerable] individuals in individual cells or units with a limited number of individuals akin to a family unit outside the facility" might remedy the identified Due Process violation. *See Jones*, 2020 WL 1643857, at *14. The Court's view has not changed, but the Court notes that if the respondents choose to place vulnerable petitioners in "units with a limited number of individuals akin to a family unit outside the facility," those units would need to be self-contained. The Due Process violation at issue here derives from the fact that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being....[because] it [has] render[ed] him unable to care for himself." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (alterations in original)

7

cells and to bathe and shower in isolation; the provision, without charge, of sufficient shower disinfectant, masks, and ample soap; and the requirement that all BFDF staff and officers wear masks *whenever* interacting with these petitioners.

### 2. Vulnerable Petitioners Remaining in Communal, Congregate-Style Housing

In *Jones*, this Court found that "the respondents [were] acting with deliberate indifference to the health and safety of those petitioners with the conditions identified by the CDC by holding them in a congregate, communal-living setting where 'social distancing is an oxymoron.'" 20 WL 1643857, at *12 (citing Docket Item 9-1 at 5 (Letter from Scott Allen, M.D., F.A.C.P., and Josiah D. Rich, M.D., M.P.H., to the House Committees on Homeland Security and Oversight and Reform, Mar. 19, 2020)) (additional citations omitted). The respondents nevertheless continue to hold *Jones* petitioners Concepcion and Falodun and *Ramsundar* petitioner Gomatee Ramsundar in dormitory settings, notwithstanding the finding of their medical expert that these petitioners meet the CDC's criteria for "vulnerable" individuals.

This Court has provided the respondents with ample time to rectify the constitutional violations identified in its prior order. The respondents have failed to do so on their own. The Court therefore orders the respondents to either provide

---

(quoting *DeShaney v. Winnebago Cty. Dept. of Soc. Svcs.,* 489 U.S. 189, 199-200 (1989)). If placed in multi-person cells, the vulnerable petitioners cannot control the actions of their cellmates. As such, the respondents may not so place the vulnerable petitioners unless they also can guarantee that the cellmates will not interact with more than two to three other people. Given the design of BFDF—72 to 92 individuals in a single unit—such a guarantee may not be possible.

Concepcion, Falodun, and Gomatee Ramsundar with their own individual cells by 5:00 p.m. today or release them in consultation with their counsel.[3]

The Court recognizes that release is an extraordinary remedy. Indeed, this Court is aware of few instances of a court's ordering the release of an individual on the grounds that the government has failed to provide reasonably safe conditions of confinement. But these are extraordinary times. When the *Jones* petitioners filed this matter on March 25, 2020—only two weeks ago—there were 83,836 reported cases of COVID-19 in the United States and 2,467 reported COVID-19 deaths. *See Coronavirus Resource Center*, Johns Hopkins Univ. & Med. (Apr. 9, 2020, 10:49 AM), https://coronavirus.jhu.edu/map. As of today, there are 432,579 reported cases and 14,830 reported deaths. *Id.*

Against this backdrop, it is clear that the petitioner's interests in liberty—indeed, in life—outweigh the government's interests in "ensuring the appearance of [the petitioners] at future immigration proceedings" and "preventing danger to the community," *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citations omitted). As this Court already has found, the petitioners' interests are substantial given their particular vulnerabilities to COVID-19. *See Jones*, 20 WL 1643857 at *7-9. The government's interests, by contrast, are relatively low. While all three petitioners have prior convictions, they have fully served their criminal sentences and are designated by

---

[3] Because the Due Process violation at issue is not permanent, the remedy ordered today similarly is not permanent. Any release ordered today—like all other relief ordered today—applies for the fourteen days of this TRO. After that, the Court will consider the appropriate length of time to enjoin the respondents from re-detaining any released petitioners. But the petitioners are cautioned that any release will be coextensive with the guidance of executive branch officials.

9

the government as low-level detainees.[4]  *See Jones*, Docket Item 42-2 at 4-5, Docket Item 47 at 5; *Ramsundar*, Docket Item 6-3 at 3, Docket Item 10 at 6.  And any risk of flight can be substantially mitigated by fashioning appropriate release conditions.  *See Zadvydas*, 533 U.S. at 696 (noting that the choice is not between detention and "living at large" but between detention and "supervision under conditions").  This Court is not alone in ordering the release of civil immigration detainees whom the government cannot provide with conditions reasonably expected to protect their health and safety.  *See, e.g.*, *Coronel v. Decker*, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020); *Basank v.*

---

[4] Petitioner Concepcion is held under 8 U.S.C. § 1226(c).  *See Jones*, Docket Item 42-2 at 4.  Section 1226(c) "states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (quoting 8 U.S.C. § 1226(c)(1)).  But a number of courts have found that constitutional protections under the Due Process clause can outweigh this mandatory statutory language.  *See Basank*, 2020 WL 1481503, at *6 (ordering the release of two section 1226(c) detainees vulnerable to COVID-19 because "courts have the authority to order those detained in violation of their due process rights released, notwithstanding [section] 1226(c)") (citing *Cabral v. Decker*, 331 F. Supp. 3d 255, 259 (S.D.N.Y. 2018)); *see also Linares Martinez v. Decker*, 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018) (noting that a "slew of cases" apply Due Process protections to immigrants detained under section 1226(c)).  This Court agrees.

The respondents also argue that petitioner Falodun is detained under 8 U.S.C. § 1231, which governs the detention of removable aliens, and therefore is subject to mandatory detention.  *See Jones*, Docket Item 42-2 at 5.  But Falodun has appealed DHS's denial of his petition for review to, and also moved for a stay of removal in, the United States Court of Appeals for the Second Circuit.  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove an alien who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied."  *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019).  This Court accordingly has held that until a Second Circuit panel rules on an alien's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the alien."  *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4.  Falodun therefore is held under section 1226(c) and the same reasoning applies to him as discussed above.

*Decker*, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *see also Ass'n of Surrogates & Supreme Court Reporters Within City of New York v. State of N.Y.*, 966 F.2d 75, 79 (2d Cir. 1992), *opinion modified on reh'g*, 969 F.2d 1416 (2d Cir. 1992) (explaining that courts have "broad discretion in fashioning equitable remedies for . . . constitutional violations").

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that the motions for TROs and petitions for habeas corpus of *Jones* petitioners Rahmee, Adelakun, and Nwankwo, and *Ramsundar* petititioner Cedeno-Larios are DISMISSED as moot; and it is further

ORDERED that the motions for TROs of *Jones* petitioner Cherry and *Ramsundar* petitioner Antonio-Espinoza *Ramsundar* are DENIED to the extent they seek immediate release and DENIED as moot to the extent they seek an order requiring the petitioners to facilitate their taking alternative "social distancing" measures; and it is further

ORDERED that the motions for TROs of *Jones* petitioners Donga, Jules, Bhuyan, Narain, Salcedo, Thomas, and Wilson are DENIED; and it is further

ORDERED that the motions for TROs of *Jones* petitioners Blackman, Commissiong, Harsit, Lainez Mejia, Brathwaite, Espinal-Polanco, Forbes, Quintanilla-Mejia, and Sow and *Ramsundar* petitioner Shane Samsundar are GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that the respondents are retrained from ending any of the following "social distancing" and other protective measures with respect to *Jones* petitioners Blackman, Commissiong, Harsit, Lainez Mejia, Brathwaite, Espinal-Polanco, Forbes,

11

Quintanilla-Mejia, and Sow, and *Ramsundar* petitioner Shane Samsundar: placement in single-occupancy cells; accommodation to eat meals in those cells and to bathe and shower in isolation; the provision, without charge, of sufficient shower disinfectant, masks, and ample soap; and the requirement that all BFDF staff and officers wear masks *whenever* interacting with these petitioners; and it is further

ORDERED that the motions for TROs of *Jones* petitioners Concepcion and Falodun and *Ramsundar* petitioner Gomatee Ramsundar are CONDITIONALLY GRANTED; the respondents shall provide these individuals with single-occupancy cells and take the other protective measures for vulnerable individuals noted above **before 5:00 p.m. on April 9, 2020**, or release these individuals after consultation with their counsel; and it is further

ORDERED that the respondents and the petitioners shall **show cause on or before April 24, 2020, why this temporary restraining order should not be converted into a preliminary injunction**.

SO ORDERED.

Dated:   April 9, 2020
         Buffalo, New York

                                   */s/ Lawrence J. Vilardo*
                                   LAWRENCE J. VILARDO
                                   UNITED STATES DISTRICT JUDGE