UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANE RAMSUNDAR, et al.,

        Petitioners,

      v.                                                                20-CV-402
                                                                            ORDER
CHAD WOLF, Acting Secretary, U.S.
Department of Homeland Security, et al.,

        Respondents.

_____

VERNON JONES, et al.,

        Petitioners,

      v.                                                                20-CV-361
                                                                            ORDER
CHAD WOLF, Acting Secretary, U.S.
Department of Homeland Security, et al.,

        Respondents.

_____

      The petitioners in these two actions are 15 civil immigration detainees[1] held in

the custody of the Department of Homeland Security, Immigration and Customs

---

[1] The Court previously dismissed as moot the petitions of *Jones* petitioners
Adelakoun, Commissiong, Lainez Mejia, Nwankwo, and Rahmee, and *Ramsundar*
petitioner Cedeno-Larios, because ICE had released or removed them. *See Jones*,
Docket Items 92, 107; *Ramsundar*, Docket Item 29. The respondents also have
released or removed *Jones* petitioners Bhuyan, Espinal-Polanco, Falodun, Harsit, and
Jones, as well as *Ramsundar* petitioners Gomatee Ramsundar. *See* Jones, Docket
Item 129 at 3; Docket Item 134 at 2 n.3. Because Jones, Bhuyan, Espinal-Polanco,
Falodun, Harsit, and Gomatee Ramsundar have been released from "ICE custody,
the[ir] petition[s] ha[ve] been rendered moot divesting the Court of subject matter
jurisdiction" over their petitions. *Diop v. Sessions*, 2019 WL 1894387, at *2 (S.D.N.Y.
Mar. 20, 2019).

Enforcement ("ICE") at the Buffalo Federal Detention Facility in Batavia, New York ("BFDF").  They have filed "Emergency Petition[s] for Writ[s] of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint[s] for Injunctive Relief."  *Jones v. Wolf*, No. 20-CV-361, Docket Item 1; *Ramsundar v. Wolf*, No. 20-CV-402, Docket Item 1.  In both cases, the petitioners alleged that their continued civil detention in the wake of the COVID-19 pandemic violated their substantive rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, and they sought their immediate release from ICE custody.  *Jones*, Docket Item 1 at 23-24; *Ramsundar*, Docket Item 1 at 20.  According to the petitions, each petitioner was "either over the age of fifty and/or [had] a serious underlying medical condition, making [him or her] more vulnerable to complications arising from COVID-19."  *Jones*, Docket Item 1 at 43; *Ramsundar*, Docket Item 1 at 4.

On April 2, 2020, this Court found that holding vulnerable individuals, as defined by the Centers for Disease Control and Prevention ("CDC"), in the then-current conditions at BFDF during the COVID-19 pandemic violated their substantive Due Process rights to reasonably safe conditions of confinement.  *Jones v. Wolf*, No. 20-CV-361, 2020 WL 1643857, at *2-12 (W.D.N.Y. Apr. 2, 2020).  The Court ordered the respondents to provide petitioners who met the CDC's vulnerability criteria with a living situation that facilitated "social distancing."  *Id.* at *14.  If the respondents did so, the violation would be rectified and judicially-ordered release would not be necessary.  *Id.* at *14-15.

2

On April 9, 2020, this Court found that the respondents' proposed measures to facilitate "social distancing"[2] would be sufficient to remedy the previously-identified Due Process violation.  *Jones*, Docket Item 71; *Ramsundar*, Docket Item 12.  The respondents' medical expert, Captain Abelardo Montalvo, M.D., represented that all vulnerable petitioners were afforded the following "social distancing" measures:

> a. Maintaining a distance of 6 feet between individuals;
>
> b. Providing space at meal time so that each detainee can remain 6 feet away from any other detainee, and allowing detainees to eat at their beds for maximum distancing;
>
> c. Pre-screening all visitors to the housing units (which will consist solely of BFDF staff) by taking temperatures and seeing if the person is exhibiting flulike symptoms;
>
> d. Providing for individual cells and/or beds with 6 feet of separation between each bed;
>
> e. Providing outdoor recreation in areas allowing for detainees to maintain 6 feet of separation from any other detainee.

*Jones*, Docket Item 45 at 2.  Captain Montalvo further represented that the following additional steps related to personal protective equipment ("PPE") were being taken at BFDF "to help combat the introduction, and limit the spread, of COVID-19":

---

[2] "Social distancing is the practice of increasing the space between individuals and decreasing the frequency of contact to reduce the risk of spreading a disease (ideally to maintain at least 6 feet between all individuals, even those who are asymptomatic).  Social distancing strategies can be applied on an individual level (e.g., avoiding physical contact), a group level (e.g., canceling group activities where individuals will be in close contact), and an operational level (e.g., rearranging chairs in the dining hall to increase distance between them).  Although social distancing is challenging to practice in correctional and detention environments, it is a cornerstone of reducing transmission of respiratory diseases such as COVID-19."  *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention (last updated July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

. . . [c]arrying of masks for detainee use and staff use during transports or pick-ups; . . . [d]etainees who are moved out of the . . . quarantine unit[s] for any type emergency will be required to wear N-95 mask and gloves; . . . [i]ncreased stock of PPE and cleaning supplies; . . . [f]it testing of PPE masks for custody staff and removal of facial hair that may interfere with tight seal of mask to face; . . . [u]se of surgical masks for detainee use to reduce exposure; . . . [and w]eekly counting of PPE to monitor supplies.

*Ramsundar*, Docket Item 6-2 at 6-7.

Accordingly, the Court granted the petitioners' motions for temporary restraining orders only in part.  *Jones*, Docket Item 71; *Ramsundar*, Docket Item 12.  On April 27, 2020, the Court converted the temporary restraining orders into preliminary injunctions. *Jones*, Docket Item 89; *Ramsundar*, Docket Item 27.  And on May 20, 2020, after holding a remote evidentiary hearing on the conditions at BFDF, the Court amended the preliminary injunctions.  *Jones*, Docket Item 109; *Ramsundar*, Docket Item 45.

As amended, the preliminary injunctions prohibit the respondents from denying any of the following "social distancing" and other protective measures to petitioners "who me[e]t the CDC's criteria for vulnerability to COVID-19": placement in single-occupancy cells; accommodation to eat meals in those cells and to bathe and shower in isolation; the provision, without charge, of sufficient shower disinfectant, masks, and ample soap.  *Jones*, Docket Item 89 at 9-10; *Ramsundar*, Docket Item 27 at 9-10.  It also requires that all BFDF staff and officers wear masks whenever interacting with vulnerable petitioners; that BFDF post language-accessible signs communicating information about wearing face masks and social distancing; that BFDF provide detainees language-accessible copies of all prior and future executive orders issued by Governor Cuomo concerning COVID-19; and that BFDF conduct biweekly COVID-19

4

testing of all consenting detainees housed in the vulnerable detainees' units.  *See Jones*, Docket Item 109.

The respondents also must submit weekly status reports detailing: (1) the conditions of confinement for each vulnerable petitioner (cell occupancy, meal and bathing accommodations, soap and mask provision, and officer and staff mask use); (2) the total number of infected and hospitalized BFDF detainees, including any who subsequently were transferred out of BFDF; (3) the total number of infected BFDF ICE officers and non-government staff members; (4) for each unit, the total number of infected detainees, officers, and staff (disaggregated) who have lived or worked in that unit in the past 14 days; (5) the status of language-accessible signage; (6) the status of language-accessible copies of executive orders; and (7) for each unit, the total number of positive and negative COVID-19 tests.  *Jones*, Docket Items 89, 109; *Ramsundar*, Docket Item 27, 45.

The table below summarizes the status of each of the original 27 petitioners, 15 of whom remain in ICE custody.  *See* Docket Item 129 at 2-3, 4; Docket Item 134 at 2. Presently before the Court are the parties' submissions concerning the appropriate scope of the final relief in this matter.  *See Jones*, Docket Items 111, 113, 129, 132; *Ramsundar*, Docket Item 62.

| Case | Last Name | Medical Status (per ICE) | Housing Status |
|------|-----------|--------------------------|----------------|
| *Jones* | Blackman | Vulnerable | single-occupancy cell |
| *Jones* | Braithwaite | Vulnerable | single-occupancy cell |
| *Jones* | Chery | Vulnerable | single-occupancy cell |
| *Jones* | Concepcion | Vulnerable | single-occupancy cell |
| *Jones* | Forbes | Vulnerable | single-occupancy cell |
| *Jones* | Jules | Vulnerable | single-occupancy cell |
| *Jones* | Quintanilla-Mejia | Vulnerable | single-occupancy cell |
| *Jones* | Sow | Vulnerable | single-occupancy cell |
| *Ramsundar* | Ramsundar, Shane | Vulnerable | single-occupancy cell |

| Case | Last Name | Medical Status | Housing Status |
|------|-----------|----------------|----------------|
| *Jones* | Narain | Non-Vulnerable | single-occupancy cell |
| *Jones* | Thomas | Non-Vulnerable | single-occupancy cell |
| *Ramsundar* | Antonio Espinoza | Non-Vulnerable | single-occupancy cell |

| Case | Last Name | Medical Status | Housing Status |
|------|-----------|----------------|----------------|
| *Jones* | Donga | Non-Vulnerable | dorm |
| *Jones* | Wilson | Non-Vulnerable | dorm |
| *Jones* | Salcedo | Non-Vulnerable | double-occupancy cell |

| Case | Last Name | Medical Status | Housing Status |
|------|-----------|----------------|----------------|
| *Jones* | Adelakoun | - | *released* |
| *Jones* | Bhuyan | - | *released* |
| *Jones* | Commissiong | - | *released* |
| *Jones* | Espinal-Polanco | Vulnerable | *released* |
| *Jones* | Falodun | - | *removed* |
| *Jones* | Harsit | - | *released* |
| *Jones* | Jones | - | *released* |
| *Jones* | Lainez Mejia | - | *removed* |
| *Jones* | Nwankwo | - | *released* |
| *Jones* | Rahmee | - | *released* |
| *Ramsundar* | Cedeno Larios | - | *released* |
| *Ramsundar* | Ramsundar, Gomatee | - | *released* |

**Table 1**

## **DISCUSSION**

Having considered the parties' arguments, this Court converts the preliminary injunction into a permanent injunction, with certain modifications that reflect current CDC guidance. For the reasons stated in this Court's prior orders, the actions taken by the respondents remedy the previously-identified Due Process violations, and release is unnecessary. *See Jones*, 2020 WL 1643857, at *14; *Jones*, Docket Item 71 at 5-6; *Ramsundar*, Docket Item 12; *see also Jones*, Docket Item 134 at 6 (August 26, 2020, status update reporting 49 total positive tests among BFDF detainees since April 2020, and none in the previous two weeks). Nevertheless, the injunction shall remain in place. As of August 22, 2020, 168,000 Americans have died from COVID-19, and infection rates remain steady.[3] Although the Court commends the respondents for taking extensive measures to protect the petitioners—some beyond those mandated by the Court—the pandemic is far from over, and the recent resurgence underscores the critical importance of these special protections.

### A. Petitioners Antonio Espinoza, Chery, Donga, Jules, Narain, Salcedo, Thomas, and Wilson

With respect to petitioners Antonio Espinoza, Chery, Donga, Jules, Narain, Salcedo, Thomas, and Wilson, the Court finds that petitioners Chery and Jules now meet the CDC's vulnerability criteria.

---

[3] *See Cases in the U.S.*, Ctrs. for Disease Control and Prevention (last updated August 28, 2020), https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm.

In April 2020, Captain Montalvo determined that petitioners who fell into one or more of the following categories met the CDC's definition of vulnerable individuals:

a. People 65 years and older

b. People who live in a nursing home or long-term care facility

c. People of all ages with underlying medical conditions, particularly if not well controlled, including
    i. People with chronic lung disease or moderate to severe asthma
    ii. People who have serious heart conditions
    iii. People who are immunocompromised . . . [including those with the following conditions]:
        1. Cancer treatment
        2. Smoking
        3. bone marrow or organ transplant
        4. immune deficiencies
        5. poorly controlled HIV or AIDs, and
        6. prolonged use of corticosteroids and other immune weakening medications
    v. People with severe obesity (body mass index [BMI] of 40 or higher)
    vi. People with diabetes
    vii. People with chronic kidney disease undergoing dialysis
    viii. People with liver disease.

*Jones*, Docket Item 57 at 2-3.

On June 25, 2020, the CDC amended its guidance to reflect that "[o]lder [a]dults" and "[p]eople with [m]edical [c]onditions" were at "[i]ncreased [r]isk for [s]evere [i]llness."[4]  With respect to older adults, the CDC has rejected the bright-line rule of 65 years of age and now advises:

Among adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. . . .  For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people

_____

[4] *See People at Increased Risk*, Ctrs. for Disease Control and Prevention (Aug. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.[5]

With respect to medical conditions, the CDC has divided its previous list into two categories of conditions—those that put "people of any age . . . at increased risk" and those that "might" place people of any age "at an increased risk."[6]  The former category—supported by the "[s]trongest and [m]ost [c]onsistent [e]vidence"—includes serious heart conditions; cancer; chronic kidney disease; chronic obstructive pulmonary disease ("COPD"); obesity, defined as having a Body Mass Index ("BMI") of 30 or higher; sickle cell disease; immunocompromised state from a solid organ transplantation; and type-2 diabetes.[7]  The latter category—supported by either "[m]ixed" or "[l]imited" evidence—includes asthma; cerebrovascular disease; cystic fibrosis; hypertension; pregnancy; smoking; use of corticosteroids or other immunosuppressive medications; immunocompromise stated from a blood or bone marrow transplantation, HIV, other immune deficiencies; neurologic conditions; other chronic lung diseases; liver disease; type-1 diabetes; pulmonary fibrosis; and thalassemia.[8]

---

[5] *Older Adults*, Ctrs. for Disease Control and Prevention (Aug. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[6] *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (Aug. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[7] *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, Ctrs. for Disease Control and Prevention (July 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html.

[8] *Id.*

The CDC also has amended its prior guidance specifically for correctional and detention facilities.  In its guidance on managing an outbreak, the CDC recommends isolating individuals "at higher risk of severe illness."[9]  Those individuals, the CDC explains, include the two categories outlined above—older adults and people with certain medical conditions—with the added caveat that "incarcerated/detained populations have higher prevalence of infectious and chronic diseases and are in poorer health than the general population, even at younger ages."  *Id.*

In light of these updates, osteopath Eugene Charbonneau, D.O., ICE Health Services Corps, revised BFDF's vulnerability criteria.  *See Jones*, Docket Item 129-1. He concluded that *Jones* petitioners Chery (BMI is 30.22) and Jules (BMI 33.61) now qualify as vulnerable individuals.  *Id.* at 6.  But he found that *Jones* petitioners Donga (history of smoking), Narain (age 59), Salcedo (age 57), Thomas (asthma), and Wilson (age 51, history of smoking), as well as *Ramsundar* petitioner Antonio Espinoza (age 50), still do not qualify.

 As this Court has noted, it "is trained in the law, not medicine.  The best it can do in this situation is turn to the experts."  *Jones* , 2020 WL 1643857, at *7.  The petitioners deemed non-vulnerable by ICE have not submitted competing declarations *specific* to their individual conditions, medical histories, and current statuses,[10] leaving this Court

---

[9] Ctrs. for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* 16 (May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.

[10] The petitioners argue that "Dr. Charbonneau's blank conclusions . . . are not supported by any meaningful evaluations of [the] petitioners' actual and current physical conditions."  *Jones*, Docket Item 132 at 6.  But the petitioners have not submitted any competing evaluations that would remedy this alleged deficiency.  *Cf. Jones*, Docket Item 14 at 2-3 (Joe Goldenson, M.D., declaring that "*many* who are housed in jails,

with only the recommendations of the respondents' medical experts.  The Court accordingly finds that *Jones* petitioners Chery and Jules are entitled to the full panoply of protections previously ordered in this matter.[11]  But *Jones* petitioners Donga, Salcedo, and Wilson are not.  The Court therefore dismisses their petitions, but they may file new petitions should the CDC's guidance change to include them under the umbrella of vulnerable individuals or should they otherwise obtain competent medical evidence of their individual vulnerability.  The Court need not decide whether Narain, Thomas, and Antonio Espinoza in fact meet the CDC's criteria; given their placement in single-occupancy cells, they already have received all the relief the Court otherwise would grant them, rendering their petitions moot.

### B.      Final Injunction

The question then is the appropriate length of time to enjoin the respondents' actions.  This Court's order in *Jones* identified the Due Process violation as deriving from the fact that the social distancing "measure[s] that the government has forcibly— under threat of civil penalties—*imposed* on all persons within its jurisdiction cannot, at the same time, be forcibly denied to some portion of that population."  2020 WL

---

prisons, and detention centers [are] physically 10 years older than their chronological age" (emphasis added)); *Jones*, Docket Item 50 at 3 (Marc Stern, M.D., declaring that "*individuals* in jails and prisons are physiologically comparable to individuals in the community several years older" (emphasis added))

[11] The petitioners ask that, if the Court expands the protections to new individuals, it also ""restrict [the respondents] from placing any vulnerable individuals in [the Special Housing Unit ("SHU")]."  Docket Item 132 at 12.  In the absence of any allegation that such placement already has happened, or at least is likely to happen imminently, the Court will not preemptively decide this substantial constitutional question.  The vulnerable petitioners may amend their petitions if they are, in fact, placed in the SHU.

1643857, at *12 (alteration in original).  This Court focused in particular on the fact that

the Governor of New York, Andrew Cuomo, had "taken a number

of *unprecedented* steps," including "closing . . . all schools and universities, as well as

nearly all businesses and places of public accommodation, and . . . prohibit[ing] non-

essential gatherings of any size through at least April 15, 2020."  *Id.* at *11 (alteration in

original) (citation and footnote omitted).

The petitioners ask this Court to maintain the injunction "as long as the COVID-

19 crisis remains a danger to [the p]etitioners."  *Jones*, Docket Item 111 at 27.  The

respondents find this standard "vague" and ask, instead, that the Court "fashion

requirements for the lifting of the injunction that take into account the rural location of

. . . BFDF" and "consider[s] the restrictions in place at BFDF, whereby all entrants are

screened, have their temperatures taken, and are questioned about symptoms and

exposure to COVID-19."  *Jones*, Docket Item 1113 at 9.

Because the Due Process violation at issue stemmed from the government's

failure to afford protections commensurate with those otherwise mandated by executive

officials, the remedy similarly must rest on that basis.  Since this Court preliminarily

enjoined the respondents, Governor Cuomo has extended the emergency declaration

and many of the closure orders and gathering limits through at least September 4,

2020.[12]  The Governor's orders provide, among other things, that "any individual who is

over age two and able to medically tolerate a face-covering shall be required to cover

---

[12] *See, e.g.*, N.Y. Exec. Order No. 202.57 (August 20, 2020),
https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO202.57.pdf; N.Y.
Exec. Order No. 202.55 (August 5, 2020),
https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.55.pdf.

their [*sic*] nose and mouth with a mask or cloth face-covering when in a public place and unable to maintain, or when not maintaining, social distance."[13]  Governor Cuomo also has mandated fourteen-day quarantines, under threat of civil penalties up to $10,000, for anyone entering New York State from areas with significant community spread of COVID-19; that list currently includes 31 states and territories.[14]  The United States Department of Health and Human Services' public health emergency declaration remains in place.[15]

The Court agrees that in light of the patchwork response to the pandemic playing out across the country, the appropriate reference point is executive branch of New York State.  The injunction will remain in place until Governor Cuomo lifts current restrictions on social-distancing.  More specifically, until the Governor determines that individuals safely may congregate closer than six feet from each other, without wearing a mask, the terms of this injunction will remain in place.

---

[13] N.Y. Exec. Order No. 202.17 (Apr. 15, 2020),
https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.17.pdf.

[14] N.Y. Exec. Order No. 205 (Jun. 24, 2020),
https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO205.pdf; *COVID-19 Travel Advisory*, N.Y. Dep't of Health (last visited August 28, 2020),
https://coronavirus.health.ny.gov/covid-19-travel-advisory.

[15] *See* Alex M. Azar II, Secretary of Health and Human Svcs., *Renewal of Determination That a Public Health Emergency Exists*, U.S. Dept. of Health & Human Svcs. (July 23, 2020),
https://www.phe.gov/emergency/news/healthactions/phe/Pages/covid19-23June2020.aspx.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED under Rule 42(a)(2) of the Federal Rules of Civil Procedure that the Clerk of Court shall consolidate *Jones*, 20-cv-361, and *Ramsundar*, 20-cv-402, under case number 20-cv-361; close the case bearing number 20-cv-402; and docket all future submissions in these matters under case number 20-cv-361; and it is further

ORDERED that the petitions of *Jones* petitioners Adelakoun, Bhuyan, Commissiong, Espinal-Polanco, Falodun, Harsit, Jones, Lainez Mejia, Narain, Nwankwo, Rahmee, and Thomas, and of *Ramsundar* petitioners Antonio Espinoza, Cedeno-Larios, and Gomatee Ramsundar, are DISMISSED as moot, and the Clerk of Court shall terminate them as parties to this consolidated action; and it is further

ORDERED that the petitions of *Jones* petitioners Donga, Salcedo, and Wilson are DISMISSED, and the Clerk of Court shall terminate them as parties to this consolidated action; and it is further

ORDERED that the petitions of *Jones* petitioners Blackman, Brathwaite, Chery, Concepcion, Forbes, Jules, Quintanilla-Mejia, and Sow, and *Ramsundar* petitioner Shane Ramsundar, are GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that the respondents are enjoined from denying any of the following "social distancing" and other protective measures to *Jones* petitioners Blackman, Brathwaite, Chery, Concepcion, Forbes, Jules, Quintanilla-Mejia, and Sow, and *Ramsundar* petitioner Shane Ramsundar:  placement in single-occupancy cells; accommodation to eat meals in those cells and to bathe and shower in isolation; and

14

the provision, without charge, of sufficient shower disinfectant, masks, and ample soap; and it is further

ORDERED that all BFDF staff and officers shall wear masks whenever interacting with these vulnerable petitioners; and it is further

ORDERED that the respondents shall post signs throughout BFDF in English, Spanish, and any other language necessary to communicate the information to substantially all detainees at BFDF, advising detainees about the importance of, and providing guidance with respect to, wearing masks and maintaining six feet of distance to protect others from asymptomatic transmission; post or otherwise provide detainees with written copies of all prior and future executive orders issued by Governor Cuomo concerning COVID-19 (202–202.31) in all languages available on the New York State website (Bengali, Mandarin, Haitian-Creole, Korean, Russian, and Spanish); and conduct biweekly COVID-19 testing of all consenting detainees housed in the vulnerable detainees' units; and it is further

ORDERED that the respondents shall provide the Court with a status update every 30 days that details: (1) the conditions of confinement for each vulnerable petitioner (cell occupancy, meal and bathing accommodations, soap and mask provision, officer and staff mask use, and the status of language-accessible signage and executive orders); and (2) for each unit at BFDF, the 30-day and running total of positive and negative COVID-19 tests, hospitalizations, and deaths among (a) detainees and (b) BFDF ICE officers and non-government staff members who have worked in that unit; and it is further

ORDERED that either party may move to lift this injunction when Governor

Cuomo determines that individuals safely may congregate closer than six feet from

each other, without wearing a mask.


SO ORDERED.

Dated:          August 31, 2020
                Buffalo, New York



                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE