UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

MARCKINDAL JULES[1],

        Petitioner,

   v.

ALEJANDRO MAYORKAS,[2] *in his official
capacity as Secretary, U.S. Department of
Homeland Security*, et al.,

        Respondents.

———————————————————

20-CV-361-LJV
DECISION & ORDER

The remaining petitioner in this consolidated action, Marckindal Jules, is a civil

immigration detainee held in the custody of the United States Department of Homeland

Security ("DHS"), Immigration and Customs Enforcement ("ICE"), at the Buffalo Federal

Detention Facility ("BFDF") in Batavia, New York.  Jules, along with a group of other

detainees who were "over fifty and/or [had] a serious underlying medical condition,"

originally sought their immediate release from ICE custody due to allegedly

unconstitutional conditions at the BFDF at the beginning of the COVID-19 pandemic.

*See* Docket Item 1 at 4, 24-25.  After this Court determined that the then-current

———————————————

[1] Because petitioner Shane Ramsundar has been released from custody, *see*
Docket Item 290 at 1 n.1, his "petition has been rendered moot divesting the Court of
subject matter jurisdiction" over his petition.  *Diop v. Sessions*, 2019 WL 1894387, at *2
(S.D.N.Y. Mar. 20, 2019).  The Clerk of the Court shall terminate Ramsundar as a party
to this action and update the caption accordingly.

[2] The caption has been updated under Federal Rule of Civil Procedure 25(d).
The Clerk of the Court shall substitute current United States Department of Homeland
Security Secretary Alejandro Mayorkas for former Acting Secretary Chad Wolf.

conditions at the BFDF violated vulnerable detainees' substantive due process rights to reasonably safe conditions of confinement, the Court granted temporary and ultimately permanent injunctive relief to remedy that constitutional violation. *See* Docket Items 44, 71, 89, 135.

On February 22, 2021, the petitioners moved to modify the permanent injunction to require the respondents to procure and offer COVID-19 vaccinations to vulnerable detainees and to require regular COVID-19 testing for BFDF staff.[3] *See* Docket Item 156. After the Court directed the respondents to make efforts to acquire and offer vaccines to all vulnerable detainees, and after all those who consented were vaccinated, *see* Docket Item 202, the respondents moved to vacate prior vaccine-related orders, Docket Item 209.[4] The respondents also argued that the vaccination of consenting detainees rendered the petitioners' request to test BFDF staff for COVID-19 moot. *Id.* The petitioners disagreed, and both sides fully briefed the issue. *See* Docket Items 221, 223.

For the reasons that follow, the petitioner's motion to modify the permanent injunction to require regular staff testing is denied.

---

[3] At the time of the motion for COVID-19 vaccination and staff testing, a number of other petitioners remained in this action. *See* Docket Item 156. Since then, all but petitioner Jules have been released from DHS custody. *See* Docket Items 214, 256, 290.

[4] This Court resolved the respondents' motion to vacate prior vaccine-related orders when it approved the parties' stipulation to vacate on May 19, 2021. *See* Docket Item 222 (ordering Docket Item 220).

**FACTUAL BACKGROUND**

On April 2, 2020, this Court found that holding vulnerable individuals, as defined by the Centers for Disease Control and Prevention ("CDC"), in the then-current conditions at the BFDF during the COVID-19 pandemic violated their substantive due process rights to reasonably safe conditions of confinement. *See Jones v. Wolf*, 467 F. Supp. 3d 74, 81-93 (W.D.N.Y. 2020). The Court therefore ordered the respondents to provide those petitioners who met the CDC's vulnerability criteria with a living situation that facilitated "social distancing." *Id.* at 96.

On April 9, 2020, this Court found that the respondents' proposed measures largely were sufficient to remedy the previously-identified constitutional violation. *See* Docket Item 71. Accordingly, the Court granted the petitioners' motions for temporary restraining orders only in part. *See id.* On April 27, 2020, the Court converted the temporary restraining orders into preliminary injunctions.[5] *See* Docket Item 89. And on August 31, 2020, the Court modified the requirements in the preliminary injunctions and converted them into a permanent injunction. *See* Docket Item 135 (requiring various social distancing and other protective measures at the BFDF as well as instituting thirty-day reporting requirements for the respondents).

On February 22, 2021, the petitioners moved to modify the permanent injunction. Docket Item 156. Specifically, they sought an order (1) requiring the respondents to "take immediate steps to procure and offer the [COVID-19] vaccination to [the p]etitioners" and (2) requiring that "all staff coming in and out of the BFDF receive

---

[5] On May 20, 2020, the Court amended the preliminary injunctions. *See* Docket Item 109.

3

regular COVID-19 testing."[6]  Docket Item 156-2 at 2.  On February 24, 2021, the respondents opposed the motion, Docket Item 159, and the next day, the petitioners replied, Docket Item 160.  After extensive filings, *see* Docket Items 167-68, 172, 174-78, 180-81, 184, 186-87, 189, 192-94, 199; a series of oral arguments and status conferences, *see* Docket Items 162, 173, 183, 191, 196, 198, 200; and a number of directives from the Court, *see* Docket Items 161, 171, 182, 190, 197, the BFDF was able to vaccinate all consenting vulnerable detainees, *see* Docket Item 202.  In light of this update, the Court directed the parties to file any relevant motions or stipulations addressing the developments at the BFDF.  *See* Docket Item 203.

On April 20, 2021, the parties stipulated to lift the reporting requirement in the permanent injunction.  Docket Item 204.  The respondents then filed a motion to vacate this Court's prior orders related to vaccination on April 27, 2021, and argued that the vaccination efforts at the BFDF rendered the petitioners' motion to amend the permanent injunction moot.  *See* Docket Item 209.  On May 17, 2021, the parties agreed to dismiss the petitioners' request that the BFDF procure and provide vaccines to detainees as well as to vacate this Court's prior vaccine-related orders.  *See* Docket Item 220 at 3.  The parties further agreed that the respondents would make good-faith efforts to continue vaccinating incoming detainees and would allow detainees to be vaccinated even after an initial refusal.  *See id.*; *see also* Docket Item 222.  That same day, the petitioners responded to the respondents' argument that the motion to amend

---

[6] The BFDF staff covered by the motion include all "non-visitor personnel at the BFDF, including ICE employees, DHS employees, and contract employees."  *See* Docket Item 238 at 4 n.4; Docket Item 232 at 2 n.1.

was rendered moot.  Docket Item 221.  On May 24, 2021, the respondents replied.
Docket Item 223.

After the federal government announced vaccine requirements for federal
employees and onsite contractors, the Court ordered further briefing on the effect of
those orders on the petitioners' remaining request for regular staff testing.  *See* Docket
Item 230.  The parties filed additional memoranda and a status update, *see* Docket
Items 232, 238, 244, and the respondents agreed to submit further status updates on
the executive orders after their planned rollouts, *see* Docket Item 245.  The respondents
filed an update on January 14, 2022, Docket Item 276, and the petitioners filed a
response in continued support of their request five days later, Docket Item 279.  At the
Court's request, both sides provided additional briefing on other cases involving
surveillance testing in detention facilities.  *See* Docket Items 287, 289, 290.

## LEGAL PRINCIPLES

The parties agree that the standard applicable to the petitioner's motion is the
same standard governing the issuance of an injunction.[7]  *See* Docket Item 159 at 5;

---

[7] The petitioner has styled the motion as a "motion to modify the permanent
injunction."  *See* Docket Item 156; *see also* Docket Item 156-2 ("mov[ing] this Court to
modify its permanent injunction order . . . due to changed circumstances").  "Courts may
not, under the guise of modification, impose entirely new injunctive relief."  *Salazar by
Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018).  Here, the petitioner
seeks to impose an entirely new regime of surveillance testing at the BFDF—far
different relief from the social-distancing and protective measures that this Court
ordered as part of the permanent injunction.  *See* Docket Item 135.  So the petitioner's
motion likely seeks relief outside the scope of a motion for modification under Federal
Rule of Civil Procedure 60(b).  But because the parties apparently agree that the legal
standard governing the motion is the same standard governing the issuance of an
injunction, the petitioner has waived application of a less exacting standard and this
Court considers the motion under the standard governing permanent injunctions.

Docket Item 160 at 6.  Although the parties apparently also agree that this Court should consider the petitioner's motion as one seeking preliminary injunctive relief, *see* Docket Item 159 at 5; Docket Item 160 at 6, the petitioner requests an order requiring an ongoing testing regime at the BFDF as part of the permanent injunctive relief this Court previously entered.  Accordingly, this Court considers the petitioner's motion under the standards applicable to permanent injunctive relief.

"[A] party requesting permanent injunctive relief must demonstrate (1) irreparable harm" and "(2) actual success on the merits."  *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011).   "As an equitable remedy, a permanent injunction also requires a showing that remedies at law will inadequately compensate for the injury, that an equitable remedy is warranted in light of the balance of hardships between the [parties], and that the injunction would not disserve the public interest."  *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 911 F.3d 104, 109 n.2 (2d Cir. 2018), *rev'd on other grounds*, 140 S. Ct. 2082 (2020)*.*

## DISCUSSION

## I.      PROPOSED TESTING REGIME AT THE BFDF

The petitioner has moved for additional injunctive relief in the form of a regime of regular testing for BFDF staff.  Specifically, the petitioner's proposed testing protocol would require "[d]aily antigen testing of all staff members who enter the BFDF and have any contact, however minimal, with detainees."  Docket Item 167 at 6.  In addition, the protocol would require "[w]eekly or twice-weekly molecular tests . . . of all BFDF staff and contractors, in addition to a molecular test of any employee who receives a positive antigen test."  *Id.*  Because the failure to adopt such a surveillance testing regime would

not amount to deliberate indifference to unreasonably unsafe conditions at the BFDF or the petitioner's serious medical needs, the petitioner's request is denied.

This Court first granted injunctive relief in this case after finding that the petitioners had "demonstrated a likelihood of succeeding on their claim that the respondents are acting with deliberate indifference to unreasonably unsafe conditions at BFDF and to those petitioners' serious medical needs." *Jones*, 467 F. Supp. 3d at 93. That was because the respondents, who held the petitioners in a "congregate, communal-living setting where 'social distancing is an oxymoron,'" had not taken adequate steps to protect vulnerable individuals from the serious risks posed by COVID-19. *Id.* at 85-93 (citation omitted). So this Court initially ordered the respondents to provide what was at that point the best defense against COVID-19: "a living situation that facilitates 'social distancing.'" *Id.* at 95. After converting the temporary restraining orders into preliminary injunctions, *see* Docket Items 71 and 89, this Court ultimately entered final injunctive relief requiring social distancing and other protective measures, *see* Docket Item 135.

Since the time this Court first ordered the respondents to redress the constitutional violation, the respondents have taken a number of steps toward mitigating the effects of COVID-19 at the BFDF—for both vulnerable individuals and the BFDF population at large. Most basically, the respondents complied with the injunctive relief ordered by this Court to rectify the previously-identified due process violations. *See, e.g.*, Docket Item 159-1 at ¶ 5. That relief included placing vulnerable individuals in single-occupancy cells, allowing vulnerable individuals to eat and shower in isolation, and providing sufficient shower disinfectant, masks, and soap. *See* Docket Item 135 at

4.  The Court also required that BFDF staff wear masks whenever they interact with vulnerable petitioners and ordered the respondents to conduct biweekly COVID-19 testing of all consenting detainees housed in the vulnerable detainees' units.[8]  *See id.* at 4-5.  But the respondents also voluntarily expanded the relief ordered by this Court and afforded similar protections to all BFDF detainees by allowing all detainees to eat in isolation, broadly mandating masking for BFDF staff, and ensuring widespread availability of testing and masks for all detainees.  *See* Docket Item 159-1 at ¶ 7.

Perhaps most significantly, all consenting eligible detainees were vaccinated against COVID-19 soon after the petitioners first moved to require vaccinations.  After some initial difficulties, *see, e.g.*, Docket Items 194 and 197, all consenting vulnerable detainees were vaccinated against COVID-19 by mid-April 2021, *see* Docket Item 202. A few weeks later, all detainees at the BFDF—vulnerable or not—had been offered the COVID-19 vaccine.  *See* Docket Item 212.  All detainees who initially refused vaccinations were informed that they could change their minds at any time and get vaccinated.  *See id.*  And by May 2021, the respondents had secured a sufficient reserve supply of vaccine doses to use for consenting incoming detainees or others who subsequently wanted to be vaccinated.  *Id.*

And the respondents have instituted additional protective measures among BFDF staff.  All detention officers must wear N95 masks while working at the BFDF at all times, and staff likewise must wear masks unless they are eating in break rooms. *See* Docket Item 276; Docket Item 159-1 at ¶ 7.  Staff members must stay home and

---

[8] Incoming detainees also are screened and tested for COVID-19 on arrival at the BFDF.  *See, e.g.*, Docket Item 137.

seek testing if they have COVID-19 symptoms, and they can return to work only after testing negative or receiving other medical clearance.[9]  Docket Item 159-1 at ¶ 7.

Moreover, vaccination of detention officers at the BFDF has increased substantially since the announcement of the federal contractor vaccine requirement.[10] By January 2022, nearly all detention officers had been vaccinated against COVID-19. *See* Docket Item 276.  Likewise, DHS has implemented systems to ensure that BFDF employees complied with the federal employee vaccine requirement, which went into effect in late November 2021.[11]  *See* Docket Item 244.

That is not to say that these efforts were successful in eliminating COVID-19 at the BFDF.  Like the country at large, BFDF saw an increase in positive tests among detainees and facility staff in late 2021 and early 2022.  *See* Docket Items 257-75, 277-78, 280-83, 285-86, 288.  But after saturation testing of the general detainee population and particularly affected housing units, all those with COVID-19 had recovered by mid-February 2022.  *See* Docket Item 291.

In light of the respondents' actions to mitigate the effects of COVID-19 at the BFDF, this Court cannot conclude that their failure to adopt a staff testing protocol amounts to deliberate indifference to unreasonably unsafe conditions at the BFDF and to the petitioner's serious medical needs.  Throughout this case, this Court has

---

[9] The respondents refer to that policy as a "system of contact tracing."  Docket Item 181 at 7.

[10] That order currently is enjoined nationwide.  *See Georgia v. Biden*, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021).

[11] The federal employee vaccine requirement likewise was enjoined nationwide in early 2022.  *See Feds for Med. Freedom v. Biden*, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022).

fashioned relief in an attempt to provide detainees the same sort of protections that they might have if they were not detained.  Stated another way, the Court tried to view the BFDF as a microcosm of society and to impose requirements consistent with the safety measures recommended for all.  Seen in that light, and given that such testing is not commonly required elsewhere, the testing requirement is a step too far.

The lone case identified by the petitioner where another federal court ordered ongoing surveillance testing for detention facility staff does not suggest otherwise.[12]  In *Zepeda Rivas v. Jennings*, 504 F. Supp. 3d 1060 (N.D. Cal. 2020), the court initially entered an "additional, more intrusive temporary restraining order . . . requiring regular detainee and staff testing" after the defendants "made no meaningful effort to prevent and were totally unprepared to respond to" a prolonged COVID-19 outbreak.  *Id.* at 1064.  In fact, the defendants not only refused to test facility staff, they "conscious[ly] avoid[ed]" *any* "widespread testing for fear that positive tests would require them to take measures to protect the safety of detainees that they preferred not to take."  *Id.* at 1065.  Faced with the defendants' "abominable" and "appalling" record in taking steps to mitigate or prevent COVID-19 at the detention facility, the court ordered regular staff and detainee testing.  *Id.* at 1064, 1076-77.

*Zepeda Rivas* therefore presents circumstances far afield from those here.  Here, the respondents have adopted a diagnostic testing and isolation regime for BFDF staff

---

[12] In the second case identified by the petitioner, the parties stipulated to "require[] weekly saturation COVID-19 testing for a period of 4 weeks followed by a re-assessment of the need for further saturation testing."  *Roman v. Wolf*, 2020 WL 6107069, at *8 (C.D. Cal. Oct. 15, 2020).  So the *Roman* court did not face the same request that the petitioner presents here.  Likewise, in *Coreas v. Bounds*, 2021 WL 252718 (D. Md. Jan. 26, 2021), facility staff already had implemented a voluntary surveillance testing plan.  *Id.* at *2.

with COVID-19 symptoms.  Here, the respondents have ensured that all detainees at the BFDF have access to the COVID-19 vaccine, and they have taken steps to ensure widespread vaccination among BFDF staff.  And all that is in addition to the relief previously ordered by this Court to facilitate social distancing and mitigate the effects of COVID-19 at the BFDF.  In light of all that, the respondents are not acting with deliberate indifference to unreasonably unsafe conditions at the BFDF or the petitioner's serious medical needs by failing to adopt a surveillance testing regime.  The petitioner's motion therefore is denied.[13]

## II.   TERMINATION OF THE ACTION

The parties also have submitted their respective views on when this action may end.  *See* Docket Item 289 at 3-4; Docket Item 290 at 6-10.  The petitioner maintains that the permanent injunction should be lifted and the action dismissed only when one party moves to do so and when the New York governor determines that individuals may safely congregate closer than six feet from one another without wearing a mask.  *See* Docket Item 289 at 3-4.  The respondents, in turn, contend that the precautions at BFDF, the availability of COVID-19 vaccines, and the "nearly-complete vaccination of staff members" has rendered the entire action moot.  *See* Docket Item 290 at 10.

Because neither party actually has moved to lift the permanent injunction and terminate the case, the Court will not pass on that question today.  But in light of the

---

[13] Because this Court concludes that the petitioner has not demonstrated actual success on the merits, the Court does not reach the remaining considerations for permanent injunctive relief.

respondents' view that the action should be dismissed now, the respondents may move to dismiss the case or submit a status update on when they plan to do so.

## CONCLUSION

For all the above reasons, the respondents' failure to adopt a surveillance testing policy at the BFDF does not amount to deliberate indifference to unreasonably unsafe conditions at the BFDF or to the petitioner's serious medical needs.  For that reason, the petitioner's motion to modify the permanent injunction to require regular staff testing, Docket Item 156, is DENIED.


SO ORDERED.

Dated:   March 8, 2022
         Buffalo, New York



                                    _/s/ Lawrence J. Vilardo_____
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE